# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

SHAWN M. EDEN,

        Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

No. 18-CV-0076-LTS-KEM

**REPORT AND RECOMMENDATION**

_____

      Plaintiff Shawn M. Eden seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his application for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Eden argues that the ALJ's residual functional capacity (RFC) determination is not supported by some medical evidence. The ALJ found Eden could have occasional contact with the public, coworkers, and supervisors, but did not impose additional limitations in social interaction, which Eden argues is inconsistent with the medical opinions of record, which all limited Eden to short-lived, superficial contact with people and found Eden markedly limited in his ability to interact with the general public. Eden also raises (for the first time) an Appointments Clause challenge in reliance on *Lucia v. SEC*, 138 S. Ct. 2044 (2018). I recommend **reversing** the Commissioner's decision and **remanding** for further proceedings.

## I. BACKGROUND[1]

Eden filed an application for SSI benefits on September 2, 2014. AR 56.[2] The Social Security Administration denied his application initially in December 2014 and upon reconsideration in January 2015. AR 56-79. In connection with those reviews, state agency consultants Jennifer Wigton, PhD, and Russell Lark, PhD, evaluated Eden's mental RFC.[3] AR 59-64, 72-77. Dr. Wigton found that Eden suffered from marked difficulties in maintaining social functioning—specifically, she found Eden suffered marked limitations in his "ability to interact appropriately with the general public," moderate limitations in his "ability to accept instructions and respond appropriately to criticism from supervisors," and moderate limitations in his "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." AR 59, 62. Dr. Wigton concluded that Eden "would have significant issues if he were to work in settings requiring frequent interactions with others," but "he is capable of sustaining brief, superficial interactions with others, when in his perceived best interest to do so." AR 63. On reconsideration, Dr. Lark concurred, specifically noting he agreed with Dr. Wigton's assessment that Eden could perform "simple, repetitive tasks on a sustained basis in an environment requiring limited contact with others." AR 72, 75-77.

Eden requested review by an ALJ, and the ALJ held a hearing on August 25, 2017, with Eden appearing by telephone due to his incarceration. AR 29-31; Doc. 12. Eden and a vocational expert testified at the hearing. AR 30.

---

[1] For a more thorough overview, see the Joint Statement of Facts (Doc. 12).

[2] "AR" refers to the administrative record below, filed at Docs. 10-2 to 10-8.

[3] RFC is "'what the claimant can still do' despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (quoting *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987)).

On September 27, 2017, the ALJ issued a written opinion following the familiar five-step process outlined in the regulations[4] to find Eden not disabled. AR 10-17. The ALJ found that Eden suffered from the following severe impairments: post-traumatic stress disorder, depression, and anxiety. AR 12. At step three, the ALJ recognized that some "assessments . . . reflect that [Eden] has some marked limitations with regard to social interaction," but the ALJ concluded that because "treatment and medication . . . help [Eden,] . . . assessing [Eden] with marked limitations in any area of mental functioning is too much in this case." AR 13. To evaluate whether Eden's impairments prevented him from performing his past work or other work (at steps four and five), the ALJ determined Eden's RFC and found he could perform work at all exertional levels, but with several mental limitations. AR 14. With regard to Eden's ability to interact with people, the ALJ limited Eden to "occasional interaction with the public, co-workers, and supervisors." AR 14. The ALJ discussed Drs. Wigton's and Lark's RFC opinions, but he did not assign them any specific weight. AR 15. Neither did the ALJ provide any analysis regarding Eden's ability to interact with people (other than mentioning that "despite his social difficulties, [Eden] does have a fiancée"). *See* AR 14-15. Based on his RFC determination, the ALJ found that Eden could not perform his past work but that a significant number of other jobs existed in the national economy Eden could perform. AR 16.

The Appeals Council denied Eden's request for review on May 15, 2018 (AR 1-3), making the ALJ's decision the final decision of the Commissioner. *See* **20 C.F.R.**

---

[4] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." ***King v. Astrue***, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* **20 C.F.R. § 416.920(a)(4)**. The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." ***Goff v. Barnhart***, 421 F.3d 785, 790 (8th Cir. 2005) (quoting ***Eichelberger v. Barnhart***, 390 F.3d 584, 591 (8th Cir. 2004)).

**§ 416.1481**. Eden filed a timely complaint in this court, seeking judicial review of the Commissioner's decision (Docs. 1, 3). *See* **20 C.F.R. § 422.210(c)**. The parties briefed the issues (Docs. 13-15), and the Honorable Leonard T. Strand, Chief United States District Judge for the Northern District of Iowa, referred this case to me for a Report and Recommendation.

## II. DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* **42 U.S.C. § 405(g)**. "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Kirby*, 500 F.3d at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision." *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

Eden argues that no medical evidence supports the ALJ's RFC determination. Eden also argues that the ALJ's appointment to that position violates the Appointments Clause of the United States Constitution.

### A. *Some Medical Evidence*

When determining a claimant's RFC, the ALJ must consider "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The ALJ's RFC determination must be supported by at least some medical evidence that "addresses the claimant's ability to function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)).

4

Here, the only medical opinions in the record addressing Eden's limitations in functioning are the state agency consultant opinions by Drs. Wigton and Lark. Both psychologists found that generally, Eden suffered marked limitations in social functioning, and that in particular, Eden suffered marked limitations in interacting with the public. AR 59, 62, 72, 75. The ALJ, on the other hand, found Eden suffered no more than moderate limitations in every area of mental functioning. AR 13. Drs. Wigton and Lark opined that Eden could not "work in settings requiring frequent interactions with others" and that he could "sustain[] brief, superficial interactions with others." AR 63, 76-77. Dr. Lark summarized that Eden could work "in an environment requiring limited contact with others." AR 77. The ALJ's RFC determination limited Eden to "occasional interaction with the public, co-workers, and supervisors" (but contained no limitation involving brief or superficial interactions). AR 14.

Eden argues that "some medical evidence" does not support the ALJ's RFC determination, because the ALJ found Eden less limited in social functioning than the state agency consultants, and their medical opinions are the only medical opinions in the record. The Commissioner responds that the limitation to "brief, superficial interactions with others" is consistent with the ALJ's limitation to "only occasional interaction with the public, co-workers, and supervisors." Doc. 14. I disagree. As other courts have recognized, "'occasional' and 'superficial' are not coterminous." ***Wood v. Comm'r of Soc. Sec.***, No. 3:18-CV-76, 2019 WL 1614591, at *3 (S.D. Ohio Apr. 16, 2019), *report and recommendation adopted*, 2019 WL 1958663 (May 2, 2019); see also ***Mack v. Berryhill***, No. 16 CV 11578, 2018 WL 3533270, at *2-3 (N.D. Ill. July 23, 2018); ***Cote v. Colvin***, No. 16-CV-57-SLC, 2017 WL 448617, at *6-7 (W.D. Wis. Feb. 2, 2017). "'Occasional contact' goes to the quantity of time spent with the individuals, whereas 'superficial contact' goes to the quality of the interactions." ***Wartak v. Colvin***, No. 2:14-CV-401-PRC, 2016 WL 880945, at *7 (N.D. Ind. Mar. 8, 2016). "Even a job that requires only occasional interaction could require an employee to engage in prolonged or meaningful conversations during those few occasions." ***Sanders v. Astrue***, No. CIV.

5

11-1356 JNE/JJG, 2012 WL 1657922, at *12-13 (D. Minn. Apr. 17, 2012), ***report and recommendation rejected in part***, No. CIV. 11-1356 JNE/JJG, 2012 WL 1658988 (D. Minn. May 11, 2012) (ultimately finding that ALJ's RFC determination was supported by substantial evidence and that jobs ALJ found claimant could perform did not require "more than 'brief' and 'superficial' contact with coworkers," but agreeing with "[t]he magistrate judge's point that it is possible for a person to have occasional but lengthy and in-depth interactions with coworkers"). Moreover, the ALJ specifically indicated disagreement with the state agency consultants' findings of marked limitations in social functioning and marked limitations in interacting with the general public.[5] AR 13.

The ALJ did not offer any analysis as to why he declined to impose restrictions in the quality of interactions Eden is capable of performing, nor why he found Eden only moderately limited in social functioning (other than saying generally that treatment and medication supported his determination). Although the Commissioner is correct that "there is no requirement that an RFC finding be supported by a specific medical opinion,"

---

[5] For this reason, my prior report and recommendation in *Heims v. Berryhill*, No. 16-CV-176-LRR, 2018 WL 1177931 (N.D. Iowa Feb. 16, 2018), *report and recommendation adopted*, 2018 WL 1175227 (Mar. 6, 2018), is distinguishable. In that case, I noted that a limitation to "occasional interaction" with supervisors and coworkers and to no interaction with the public is "not necessarily less limiting than" a limitation to "need[ing] to work superficially of others." In *Heims*, the ALJ limited the claimant to no interaction with the public (which I recognized as "[c]onsistent with [the state agency consultant's] finding that [the claimant] suffers from marked limitations in her ability to interact with the general public"). ***Id.*** at 9. By contrast, here, the ALJ found the claimant could have "occasional" interaction with the public despite the state agency consultants' finding that Eden was markedly limited in that category. Second, in *Heims*, I ultimately determined that "some medical evidence" did not support the ALJ's RFC determination. *See id.* at 11. I also note that the case cited in *Heims*, *Bendt v. Chater*, 940 F. Supp. 1427, 1432-33 (S.D. Iowa 1996), was not specifically addressing whether some medical evidence supported the ALJ's RFC opinion (and appeared to be concerned with whether substantial evidence supported the ALJ's determination that the claimant could have occasional interactions, rather than with the ALJ's failure to include a limitation to short-lived, superficial interactions). Ultimately, here, it is clear that the ALJ rejected the state agency consultants' opinions (distinguishing this case from *Heims*), as the ALJ did not state he was assigning the opinions great weight, and the ALJ specifically rejected the opinions' finding of marked limitations in social functioning (without adequate explanation).

*Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016); the ALJ may not impose fewer limitations than found in all the medical-opinion evidence and thereby formulate his own medical opinion. *See Lauer*, 245 F.3d at 704-05 (rejecting the Commissioner's argument that the ALJ's RFC determination was based on the opinion of the non-examining reviewing consultant when the medical basis for the ALJ's decision was unclear and the non-examining reviewing consultant found fewer severe impairments than the ALJ); **Peterson v. Colvin**, No. C14-4110-LTS, 2016 WL 1611480, at *11 (N.D. Iowa Apr. 21, 2016) (holding that no medical evidence supported the ALJ's RFC finding that the claimant could sit or stand for thirty minutes at a time when "no medical source or other source provided an opinion that [claimant] can sit or stand for more than 15 minutes at once"); *cf.* **Julin v. Colvin**, 826 F.3d 1082, 1089 (8th Cir. 2016) (some medical evidence supported the ALJ's RFC determination when it incorporated some limitations found by the treating source and some limitations found by the state agency consultants); **Kamann v. Colvin**, 721 F.3d 945, 948-51 (8th Cir. 2013) (some medical evidence supported the ALJ's RFC finding when it was consistent with the state agency consultant's opinion); **Stormo v. Barnhart**, 377 F.3d 801, 806-807 (8th Cir. 2004) (same); **Anderson v. Shalala**, 51 F.3d 777, 779-80 (8th Cir. 1995); *cf. also* **Krogmeier v. Barnhart**, 294 F.3d 1019, 1023-24 (8th Cir. 2002) (some medical evidence supported the ALJ's RFC finding when it was consistent with the consultative examiner's opinion); **Strongson v. Barnhart**, 361 F.3d 1066, 1070-72 (8th Cir. 2004) (same).

The Commissioner argues that the jobs the ALJ found Eden could perform do not require more than short-lived, superficial interactions. This is not clear to me from the descriptions of the jobs in the Dictionary of Occupational Titles (relied upon by the Commissioner), and the VE did not testify about the existence of jobs if Eden was further limited to short-lived, superficial interactions. Accordingly, I do not find the error harmless, as urged by the Commissioner.

I recommend that the district judge find that some medical evidence does not support the ALJ's RFC determination.

7

### B. *Appointments Clause*

The Appointments Clause of the Constitution requires that principal officers be appointed by the president with the advice and consent of the Senate and that inferior officers be appointed by "the President alone, . . . the Courts of Law, or . . . the Heads of Departments." **U.S. Const. art. II, § 2, cl. 2**; *see also Lucia*, 138 S. Ct. at 2051 & n.3. The Appointments Clause does not apply to "non-officer employees—part of the broad swath of 'lesser functionaries' in the Government's workforce." *Lucia*, 138 S. Ct. at 2051.

The Supreme Court recently held in *Lucia* that the five ALJs for the Securities and Exchange Commission (SEC) are "inferior officers" subject to the Appointments Clause, as they "exercise[] significant authority pursuant to the laws of the United States." *Id.* The Court relied on *Freytag v. Commissioner*, 501 U.S. 868 (1991), in which it held special trial judges of the United States Tax Court were inferior officers subject to the Appointments Clause, noting that both SEC ALJs and Tax Court special trial judges: (1) serve career appointments "to a position created by statute, down to its 'duties, salary, and means of appointment'"; (2) take testimony during hearings and may take pre-hearing depositions; (3) administer oaths, rule on motions, and generally regulate the court during a hearing; (4) rule on the admissibility of evidence, (5) have the power to enforce compliance with discovery, including to punish contempt by excluding people from the courtroom, and (6) issue opinions detailing factual findings and legal conclusions and ordering appropriate remedies. 138 S. Ct. at 2052-54 (quoting *Freytag*, 501 U.S. at 878). The Court ordered that the petitioner receive a new administrative hearing from a properly appointed official, noting that the petitioner "timely challeng[ed]" the validity of the appointment before the administrative agency. *Id.* at 2055. The petitioner had not raised the Appointments Clause challenge to the ALJ at any point during the "nine days of testimony and argument," but after the ALJ rendered an unfavorable decision, the

8

petitioner appealed to the SEC and argued "that the administrative proceeding was invalid because [the ALJ] had not been constitutionally appointed." *Id.* at 2050.

Eden argues that following the reasoning in *Lucia*, Social Security ALJs are inferior officers subject to the Appointments Clause, and that his case should be remanded for a new hearing before a constitutionally appointed ALJ. Eden did not raise this issue at any point during the administrative proceedings. Thus, the Commissioner argues that Eden has forfeited his Appointments Clause challenge.

In *Freytag*, the petitioners challenged the appointment of the special trial judge for the first time on judicial review—indeed, the petitioners had consented in the administrative proceedings to trial by a special trial judge. 501 U.S. at 871-72. Before the Supreme Court, they argued that Appointments Clause challenges as a class cannot be forfeited or waived. *Id.* at 893 (Scalia, J., concurring). The majority opinion did not address this argument, instead "exercis[ing] its discretion to consider" the Appointments Clause challenge (which it classified as a "nonjurisdictional structural constitutional objection[]"). *Id.* at 878-79 (majority); *id.* at 893 (Scalia, J., concurring). The Court noted the Appointments Clause challenge was "neither frivolous nor disingenuous" and went "to the validity of the Tax Court proceeding." *Id.* at 879 (majority). The Court therefore concluded this was "one of those rare cases in which [a court] should exercise [its] discretion." *Id.* The Eighth Circuit has interpreted *Freytag* as creating a discretionary rule in which "a reviewing court generally is permitted (though not obliged) to hear a belated appointments clause challenge." ***NLRB v. RELCO Locomotives, Inc.***, 734 F.3d 764, 795 (8th Cir. 2013); *see also* ***Jones Bros., Inc. v. Sec. of Labor, Mine Safety, & Health Admin.***, 898 F.3d 669, 677-78 (6th. Cir. 2018) (excusing forfeiture of Appointments Clause challenge when the plaintiff noted a circuit split on the issue before the administrative agency (Federal Mine Safety and Health Review Commission) but declined to "press" the issue); ***Turner Bros., Inc. v. Conley***, 757 F. App'x 697, 699-700 (10th Cir. 2018) (holding claimant forfeited Appointments Clause challenge based on *Lucia* by failing to raise it to the agency (the Department of Labor Benefits Review

9

Board)); ***Kabani & Co., Inc. v. SEC***, 733 F. App'x 918, 919 (9th Cir. 2018) ("[P]etitioners forfeited their Appointments Clause claim by failing to raise it in their briefs or before the agency [the SEC].").

The vast majority of courts to address this issue have held that the claimant forfeited his or her *Lucia*-based Appointments Clause challenge by failing to raise it to the Social Security Administration, and the courts have declined to excuse the forfeiture. *See, e.g.,* ***Morrow v. Berryhill***, No. C 18-04641 WHA, 2019 WL 2009303, at *4 (N.D. Cal. May 7, 2019); ***Kline v. Berryhill***, No. 3:18-CV-00180-FDW, 2019 WL 1782133, at *6 (W.D.N.C. Apr. 23, 2019); ***Hutchins v. Berryhill***, No. 18-10182, 2019 WL 1353955, at *3 (E.D. Mich. March 26, 2019) (rejecting report and recommendation); ***Diane S.P. v. Berryhill***, No. 4:17cv143, 2019 WL 1879256, at *23 (E.D. Va. Mar. 21, 2019) (adopting report and recommendation); ***Valasquez ex rel. Valasquez v. Berryhill***, No. CV 17-17740, 2018 WL 6920457, at *2-3 (E.D. La. Dec. 17, 2018) (collecting cases), *report and recommendation adopted*, 2019 WL 77248 (Jan. 2, 2019); ***Flack v. Comm'r of Soc. Sec.***, No. 2:18-cv-501, 2018 WL 6011147, at *4 (S.D. Ohio Nov. 16, 2018) (collecting cases), *report and recommendation adopted*, 2019 WL 1236097 (S.D. Ohio Mar. 18, 2019). A few courts, however, have found Social Security claimants do not need to raise Appointments Clause challenges to preserve the argument for judicial review or have otherwise excused the forfeiture. *See* ***Ready v. Berryhill***, No. CV 18-04289, 2019 WL 1934874, at *2 (E.D. Pa. Apr. 30, 2019); ***Culclasure v. Comm'r of Soc. Sec. Admin.***, No. 18-1543, 2019 WL 1641192, at *12 (E.D. Penn. Apr. 16, 2019); ***Bradshaw v. Berryhill***, No. 5:18-CV-00100-RN, 2019 WL 1510953, at *2-11 (E.D.N.C. Mar. 26, 2019); ***Probst v. Berryhill***, No. 5:18-CV-130-JG, 2019 WL 1749135, at *8 (E.D.N.C. March 22, 2019); ***Bizarre v. Berryhill***, 364 F. Supp. 3d 418, 425 (M.D. Penn. 2019); ***Fortin v. Comm'r of Soc. Sec.***, No. CV 18-10187, 2019 WL 421071, at *1-4 (E.D. Mich. Feb. 1, 2019), *report and recommendation rejected in relevant part*, No. 18-10187, 2019 WL 1417161 (E.D. Mich. Mar. 29, 2019);

10

*Muhammad v. Berryhill*, No. CV 18-172, 2018 WL 8139774, at *6 (E.D. Pa. Nov. 2, 2018) (report and recommendation), *objections filed*.

I decline to follow decisions from district courts outside the Eighth Circuit. Every district court in the Eighth Circuit to address the issue (including the Northern District of Iowa) has found a Social Security claimant's Appointments Clause challenge raised for the first time on judicial review to be forfeited. *See Kesterson v. Berryhill*, No. 18-CV-2048-LRR, 2019 WL 1938809, at *18 (N.D. Iowa May 1, 2019) (Roberts, J.) (report and recommendation); *Sexton v. Berryhill*, No. 18-CV-1024-LTS, 2019 WL 1495286, at *15 (N.D. Iowa Apr. 4, 2019) (Roberts, J.) (report and recommendation); *Hernandez v. Berryhill*, No. 8:18CV274, 2019 WL 1207012, at *6 (D. Neb. Mar. 14, 2019); *Murphy v. Berryhill*, No. 18-CV-61-LRR, 2019 WL 1140235, at *17 (N.D. Iowa Mar. 12, 2019) (Roberts, J.); *Kimberly B. v. Berryhill*, No. 17-CV-5211 (HB), 2019 WL 652418, at *15 (D. Minn. Feb. 15, 2019); *Audrey M.H. v. Berryhill*, No. 17-CV-4975 (ECW), 2019 WL 635584, at *12 (D. Minn. Feb. 14, 2019); *White v. Berryhill*, No. 18-CV-2005-LTS, 2019 WL 586757, at *15 (N.D. Iowa Feb. 13, 2019) (Roberts, J.), *report and recommendation adopted*, No. C18-2005-LTS, 2019 WL 1239852 (N.D. Iowa Mar. 18, 2019); *Catherine V. v. Berryhill*, No. CV 17-3257 (DWF/LIB), 2019 WL 568349, at *2 (D. Minn. Feb. 12, 2019*)*; *Bowman v. Berryhill*, No. 4:18-CV-157 RP-HCA, 2018 WL 7568360, at *12 (S.D. Iowa Dec. 13, 2018); *Stearns v. Berryhill*, No. 17-CV-2031-LTS, 2018 WL 4380984, at *6 (N.D. Iowa Sep. 14, 2018) (Strand, C.J.); *Davis v. Comm'r of Soc. Sec.*, No. 17-cv-80-LRR, 2018 WL 4300505, at *8-9 (N.D. Iowa Sept. 10, 2018) (Reade, J.); *Iwan v. Comm'r of Soc. Sec'y*, No. 17-CV-97-LRR, 2018 WL 4295202, at *9 (N.D. Iowa Sep. 10, 2018) (Reade, J.); *Thurman v. Comm'r of Soc. Sec.*, No. 17-CV-35-LRR, 2018 WL 4300504, at *9 (N.D. Iowa Sept. 10, 2018) (Reade, J.).[6]  Eden does not make any new arguments that have not already

---

[6] A court in the District of Nebraska noted that Appointments Clause challenges are deemed to be "in the category of nonjurisdictional structural constitutional objections that could be considered on appeal whether or not they were ruled upon below," but ultimately, the court did

11

been addressed by these prior decisions. I adopt the reasoning of these decisions (and of the majority of courts to address the issue). Accordingly, I recommend the district judge reject Eden's Appointments Clause challenge.

### III. CONCLUSION

I recommend that the district court **reverse** the decision of the Commissioner, enter judgment in favor of Eden, and **remand** for further proceedings.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. **Fed. R. Civ. P. 72**. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 6th day of June, 2019.

_____
Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa

---

not address the merits of the Appointments Clause issue, as the court was already remanding on other grounds and noted that the claimant could raise the issue on remand to the Social Security Administration. *See Mann v. Berryhill*, No. 4:18-CV-3022, 2018 WL 6421725, at *8 (D. Neb. Dec. 6, 2018)