# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| SHAWN M. EDEN,<br><br>  Plaintiff,<br><br>vs.<br><br>ANDREW M. SAUL, Commissioner of Social Security,[1]<br><br>  Defendant. | No. C18-0076-LTS<br><br>**MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |

## I.  INTRODUCTION

This case is before me on a Report & Recommendation (R&R) by the Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge. Doc. No. 17. Judge Mahoney recommends that I reverse the decision of the Commissioner of Social Security (the Commissioner) denying plaintiff Shawn Eden's application for supplemental security income (SSI) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 1381, et seq., and remand for further proceedings. *Id.* Both parties have filed timely objections to the R&R. Doc. Nos. 18, 19.

## II.  APPLICABLE STANDARDS

### A.  *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact,

---

[1] Andrew M. Saul was sworn in as Commissioner of Social Security on June 17, 2019. Pursuant to Federal Rule of Civil Procedure 25(d), he has been substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003) (quoting *Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998)). The Eighth Circuit has explained that the standard "is something less than the weight of the evidence and allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991)).

To determine whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court "must search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003). However, the court does not "reweigh the evidence presented to the ALJ," *id.* at 555, or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citation omitted).

If, after reviewing the evidence, the court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even if the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (citation omitted). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is

not subject to reversal simply because some evidence may support the opposite conclusion.").

### B. *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

3

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III. THE R&R

Eden applied for SSI on September 2, 2014, claiming to suffer from mental illness, post-traumatic stress disorder (PTSD), depression, borderline personality disorder and anxiety. AR 56, 180. He alleges an onset date of July 10, 2014. *Id.* The Commissioner denied Eden's application initially and upon reconsideration. *Id.* at 56–79. After a hearing, an Administrative Law Judge (ALJ) applied the familiar five-step evaluation and found there were jobs in significant numbers in the national economy that Eden could perform based on his residual functional capacity (RFC) and, therefore, he was not disabled as defined in the Act. *Id.* at 10–17.

The Appeals Council denied Eden's request for review on May 15, 2018, after which Eden filed a timely complaint requesting judicial review by this court. *Id.* at 1–3; *see* Doc. Nos. 1, 3, 13. Eden argues that the ALJ erred in determining that he was not disabled because (1) the ALJ's RFC determination was unsupported by medical evidence and (2) the ALJ who decided his claim was not properly appointed as required by the Supreme Court's recent interpretation of the Appointments Clause in *Lucia v. SEC*, 138 S. Ct. 2044 (2018). Judge Mahoney addressed both of these arguments in the R&R. Doc. No. 17.

Eden argues that the ALJ's RFC determination was deficient because the ALJ discounted, and found contrary to, the only medical opinions regarding Eden's RFC, such that the RFC determination is unsupported by necessary medical evidence. Doc. No. 13 at 3–7. Judge Mahoney agreed, finding that "some medical evidence does not support the ALJ's RFC determination." Doc. No. 17 at 4–7. Judge Mahoney noted that the only medical opinions in the record regarding Eden's RFC came from state-agency consultants, who found marked limitations in some areas of social functioning. *Id.* at 5. She rejected the Commissioner's argument that the ALJ's RFC determination was consistent with the consultants' opinions, explaining that although the ALJ limited the

quantity of social contact Eden would have at work, the ALJ did not adequately account for the limitation on the quality of social contact expressed in the consultants' opinions. *Id.* Because the ALJ disagreed with the state agency consultants' conclusions and imposed fewer limitations without sufficiently explaining why the medical evidence in the record justified such a conclusion, Judge Mahoney concluded that the ALJ's RFC determination was not supported by "some medical evidence." *Id.* at 6–7. Judge Mahoney recommends reversing the Commissioner's decision on these grounds and remanding for further proceedings. *Id.* at 7.

Judge Mahoney then addressed Eden's Appointments Clause challenge. *Id.* at 8–12. She noted that the majority of courts and "[e]very district court in the Eighth Circuit to address the issue (including the Northern District of Iowa) ha[ve] found a Social Security claimant's Appointments Clause challenge raised for the first time on judicial review to be forfeited." *Id.* at 10–11. Judge Mahoney adopted the reasoning of these cases and recommends rejecting Eden's Appointments Clause challenge. *Id.* at 12.

## IV. ANALYSIS

In his objection, the Commissioner argues that the ALJ's RFC was supported by "some medical evidence." Doc. No. 18 at 2–5. The Commissioner notes that "an ALJ is not required to accept opinions that are inconsistent with other substantial evidence in the record," and contends the ALJ properly concluded that "the totality of the evidence did not support a marked limitation in any area of mental functioning." *Id.* at 3. The Commissioner argues that this conclusion was justified because Eden experienced some improvement with medication and his conditions worsened when he failed to comply with treatment. *Id.* at 3–4. The Commissioner also cites the fact that Eden had a fiancé, performed custodial work in prison, shops in stores and uses public transportation as reasons why Eden suffered only moderately limited social functioning. *Id.* at 4. Finally, the Commissioner argues that even if the ALJ should have given greater weight to the state agency consultants' opinions, failure to do so was harmless error because the jobs

ultimately identified at step five do not conflict with the opinions of the state-agency consultants. *Id.* at 4–5.

Eden objects only to the R&R's conclusion regarding his Appointments Clause challenge. Doc. No. 19 at 2–7. I will address the Commissioner's objection first.

A.  *Eden's RFC*

A claimant's RFC is "what [the claimant] can still do" despite his or her physical or mental "limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). To determine a claimant's RFC, the ALJ must evaluate "all of the relevant medical and other evidence" in the record. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) ("An ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence . . . ."). The RFC is a medical question and "must be supported by some medical evidence." *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005). Thus, the ALJ is "required to consider at least some supporting evidence from a [medical] professional" that "addresses the claimant's ability to function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Further, if there is no medical opinion evidence regarding a claimant's RFC, "medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings." *Hensely v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011)). In other words, if the record contains no medical opinions addressing a claimant's RFC, the ALJ's RFC determination should be affirmed if it is supported by substantial evidence from medical sources that relates to or addresses the claimant's ability to function in the workplace. *See id.*; *see also Stringer v. Berryhill*, 700 F. App'x 566, 567 (8th Cir. 2017) (per curiam).

In this case, the only medical opinions that specifically address limitations on Eden's ability to work come from state-agency consultants who did not examine Eden. AR 59, 62, 72, 75. Both consultants found marked limitations in Eden's social functioning, specifically in "[t]he ability to interact appropriately with the general public." *Id.* The ALJ discounted these opinions, finding that they were inconsistent with the record, and concluded that the record as a whole shows that Eden has only moderate limitations in interacting with others. *Id.* at 13. Because the ALJ did not rely on a medical opinion in determining Eden's RFC, the main issue is whether the record as a whole contains substantial evidence, including medical evidence addressing Eden's ability to function in the workplace, that supports the ALJ's RFC determinations regarding Eden's social functioning. Based on my de novo review, I find that the record lacks sufficient medical evidence to support the ALJ's conclusions.

The Commissioner argues that evidence in the record showing that Eden's condition improved with medication supports the ALJ's final RFC determination and decision to discount the state-agency consultants' opinions. Doc. No. 18 at 3–4. It is true that an impairment cannot be consider disabling if it "can be controlled by treatment or medication." *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009) (quoting *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004)). However, the ALJ is not permitted to infer improvement from the medical records. *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003). Evidence of improvement due to treatment or medication must be a medical finding from a medical source. *See id.*; *see also Brace*, 578 F.3d at 885 (concluding that the evidence showed lack of disability due to opinions from treating physicians who noted the claimant's impairments improved significantly while on medication).

There is some evidence supporting the Commissioner's argument. The Commissioner cites to multiple instances in the record when Eden self-reported that he was doing at least "a little bit better." Doc. No. 14 at 9–13. Eden's physicians noted that he sometimes reported improvement with different medications and sometimes

7

regressed when off medication. AR 328, 339 (noting Eden "decompensated off of meds"); *id.* at 332, 336, 352–53, 373 (noting medications helped with Eden's depression); *id.* at 335 (reporting Eden wasn't doing well and said he didn't have time to go to the STEPPS Program); *id.* at 353–55 (noting Eden was doing a little bit better and had decreased assault ideation); *id.* at 356, 375 (noting "some more mood stability and better control of anger). Like the ALJ, the Commissioner particularly relies on treatment records from Eden's most recent incarceration to suggest that his impairments are not disabling when he has structure and a regimen. *See id.* at 14; Doc. No. 18 at 3–4.

However, there is not sufficient medical evidence to support the ALJ's RFC on these grounds, especially when such a finding is contrary to the conclusions of two state-agency experts and other evidence in the record. Eden's own statements, such as that he was "doing a little bit better," do not provide substantial *medical* evidence that is relevant to his RFC. Such statements in the course of treatment, even if made by a treating physician, have "no necessary relation to a claimant's ability to work or to [his or her] work-related functional capacity." *Hutsell*, 259 F.3d at 712. Further, despite seeing some temporary or limited improvement with medication, there is evidence that Eden still had assault, homicidal and suicidal ideations at times, sometimes had his condition worsened by attempted medications, and even had to be involuntarily committed due to recurring depression and homicidal ideations. AR 336, 341, 346, 348, 351, 356, 375, 379, 406 (noting suicidal, homicidal or assault ideation despite treatment); *id.* at 330, 341, 346, 354 (noting past attempts at taking Prozac made him even more violent); *id.* at 386 (noting that Eden is a danger to others and should be involuntarily committed); *id.* at 403–12 (record of committal for homicidal ideations and comments).

Some of Eden's violent ideations related to work. Treatment notes reflect that Eden expressed feelings of wanting to kill his previous boss (AR 326), harm coworkers (AR 404) and harm or kill random people (AR 333, 344). Moments like these led one treating physician to conclude that Eden was a "danger to others" to the point that he arranged for Eden to be involuntarily committed for a time. AR 386. These facts speak

to Eden's ability to interact with coworkers and the public and likely influenced the state agency consultants' opinions, but the ALJ did not adequately address them. *See Nowling v. Colvin*, 813 F.3d 1110, 1123 (8th Cir. 2016) (finding that the ALJ erred by relying on a report that found "improvement" but failed to acknowledge "the unpredictable and sporadic nature of [the claimant's] symptoms" and that the claimant's "symptoms waxed and waned throughout the substantial period of treatment"). This weighs against finding substantial evidence supporting the ALJ's RFC finding.

As noted above, Eden seems to have experienced the most consistent improvement when he was incarcerated. *Id*. at 494–597. However, I find this evidence only slightly more persuasive. When determining a claimant's RFC, the ALJ must account for a claimant's need for a structured living environment. *See* SSR 96-8P, 1996 WL 374184 (July 2, 1996). The ALJ noted some of Eden's improvement while in a structured living environment at a correctional facility but said nothing about Eden's capacity to maintain that structure and regimen on his own once no longer incarcerated. *See Hutsell*, 259 F.3d at 711 ("Given the unpredictable course of mental illness, '[s]ymptom-free intervals and brief remissions are generally of uncertain duration and marked by the impending possibility of relapse.'") (alteration in original) (quoting *Andler v. Chater*, 100 F.3d 1389, 1393 (8th Cir. 1996)). Further, the ALJ did not point to any medical evidence suggesting that the improvement Eden experienced while incarcerated would be sufficiently sustainable for Eden to work in the future on a regular and continuing basis.

Without evidence in the record to answer these questions, I cannot find that the ALJ's conclusions are supported by substantial evidence. *See Nowling*, 813 F.3d at 1123 (finding error when the ALJ relied on report that found "improvement" in a claimant's condition but did not "assess[] the effect of [the claimant's] structured living environment" leading to that improvement); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00D(1) ("[W]hen we evaluate the effects of your mental disorder and rate the limitation of your areas of mental functioning, we will consider the kind and extent of supports you receive, the characteristics of any structured setting in which you

spend your time, and the effects of any treatment."); *id.* § 12.00F(3)(e) ("The degree of limitation of an area of mental functioning also reflects the kind and extent of supports or supervision you receive and the characteristics of any structured setting where you spend your time, which enable you to function. The more extensive the support you need from others or the more structured the setting you need in order to function, the more limited we will find you to be . . . .").

On the whole, the ALJ's conclusions that Eden's limitations would be mild or moderate if Eden is consistent with medication is based on an inference drawn from treatment notes, not on the opinions and conclusions of Eden's treating physicians. *See Shontos*, 328 F.3d at 427 (explaining that an ALJ may not draw his or her own inferences from medical reports). The ALJ's conclusion that Eden's impairments have improved to the extent he cannot be found disabled or suffers from only moderate limitations in social functioning is not supported by substantial medical evidence in the record. Therefore, the ALJ's RFC cannot be affirmed on this basis.

For the same reasons, the ALJ's decision to discount the opinions of the state-agency consultants is not supported by substantial evidence. An ALJ is not required to adopt state agency consultants' opinions but must consider those opinions "because [the] Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1). "The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001). However, as explained above, the ALJ's finding that the medical record is inconsistent with the opinions of the state-agency consultants is not supported by substantial evidence.

The Commissioner also argues that Eden's activities show he suffered no more than moderate limitations in social functioning. Doc. No. 14 at 13–14. Specifically, the Commissioner points to Eden's fiancé, work in prison, and ability to shop and use public transportation. *Id.* This argument is not persuasive. Although these activities relate in

part to a person's social functioning generally, they reveal little about Eden's ability to function continually in a work setting. Having a fiancé, working in a prison, shopping and using public transportation are not necessarily inconsistent with someone who has marked limitations in social interactions with the general public. *See* AR 62, 75. The state-agency consultants opinions recognized that the reports regarding Eden's abilities were only partially credible and that Eden could go out in public on his own. *Id.* at 63, 76. However, both opinions recommended that Eden have only brief, superficial interactions with others. *Id.* As Judge Mahoney explained, the ALJ's RFC did not sufficiently align with this finding, and this divergence is not supported by substantial evidence. *See* Doc. No. 17 at 5–6. I agree. While Eden's activities are relevant to the RFC analysis, they are not enough on their own to constitute substantial evidence supporting the ALJ's RFC.

Finally, the Commissioner argues that even if the ALJ should have credited the state-agency consultant opinions and incorporated them into Eden's RFC, there was no error because the jobs relied upon by the ALJ at step five are consistent with the state-agency consultants' opinions. Doc. No. 18 at 4–5. I do not find sufficient evidence to support this assertion. As Judge Mahoney noted, the vocational expert did not testify regarding what jobs Eden could potentially perform if his RFC was further limited and the job descriptions in the Dictionary of Occupational Titles (DOT) do not provide sufficiently clear or substantial evidence on their own. Doc. No. 17 at 7. I agree, and also find that reliance on the DOT descriptions to find harmless error would be problematic due to the ALJ's findings at step four. At step four, the ALJ found that Eden could not perform his past work. AR 16. One of his past jobs was as a kitchen helper/dishwasher. *Id.* at 16, 44. The ALJ then listed three jobs at step five that Eden could perform. *Id.* at 16–17. However, the qualifications and descriptions of the three jobs identified at step five are substantially similar to, or even less strenuous than, the job of kitchen helper/dishwasher, which the ALJ found Eden could not perform due to his limitations. *Compare* DOT 318.687-010 (kitchen helper), *with* DOT 920.687-126

11

(marker II), DOT 920.587-018 (hand packager), *and* DOT 249.587-018 (document preparer). At the very least, this apparent discrepancy, when combined with the issues discussed above, demonstrates that there is not substantial evidence in the record that Eden can perform the jobs identified at step five with a more restrictive RFC.

To conclude, upon my de novo review I agree with Judge Mahoney that the ALJ's RFC determination is flawed, as it is not supported by at least some medical evidence. Remand is necessary in order for the ALJ to conduct an appropriate RFC analysis and, if necessary, to develop the record further by obtaining medical opinions regarding how Eden's impairments limit his ability to function in the workplace.

B. *Appointments Clause Challenge*

Eden argues for remand because the ALJ was not appointed as required under the Supreme Court's holding in *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018). Doc. No. 19 at 2–7. In *Lucia*, the Supreme Court held that administrative law judges of the Securities and Exchange Commission are "Officers of the United States" within the meaning of the Appointments Clause, meaning that the President, a court of law or department head must appoint them. *Lucia*, 138 S. Ct. at 2049. Eden argues that this holding, when combined with the lack of an Appeals Council exhaustion requirement under *Sims v. Apfel*, 530 U.S. 103, 112 (2000) ("Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues."), permits a claimant to challenge the appointment of a Social Security ALJ for the first time during judicial review. Doc. No. 13 at 9–12. He also argues that even if there was an exhaustion requirement, the constitutional claims exception and the futility exception apply. *Id.* at 12–15. In the alternative, Eden asks for discretionary review of the Appointments Clause challenge under *Freytag v. Commissioner*, 501 U.S. 868 (1991). *Id.* at 17.

I have addressed this issue before and concluded that Social Security "claimants have forfeited the Appointments Clause issue by failing to raise it during administrative

proceedings." *E.g.*, *Stearns v. Berryhill*, No. 17-CV-2031, 2018 WL 4380984, at *5 (N.D. Iowa Sept. 14, 2018). Judge Mahoney noted in her R&R that every district court within the Eighth Circuit to consider this issue has reached the same conclusion. *See* Doc. No. 17 at 11. In the absence of binding authority to the contrary, I find that Eden's arguments are adequately addressed by our precedent. *See, e.g.*, *Stearns*, 2018 WL 4380984, at *5. I find nothing in Eden's arguments that compels me to amend my analysis of this issue in prior cases. Because Eden did not raise this issue before or during the ALJ's hearing or before the ALJ's decision became final, she has forfeited the issue for consideration on judicial review.

As for Eden's alternative argument, I do not accept that this is one of those "rare cases" when review of an Appointments Clause challenge is appropriate under *Freytag*. *See Freytag*, 501 U.S. at 879. However, because this case will be remanded, the Commissioner will have the opportunity to select the appropriate ALJ to review this issue and Eden may raise any Appointments Clause challenge he may have at that time.

## V. CONCLUSIONS

For the reasons set forth herein:

1. The Commissioner's objection (Doc. No. 18) to the Report and Recommendation (Doc. No. 17) are **overruled**.

2. Eden's objections (Doc. No. 19) to the Report and Recommendation (Doc. No. 17) are **overruled**.

3. I **accept** Judge Mahoney's Report and Recommendation without modification. *See* 28 U.S.C. § 636(b)(1).

4. Pursuant to Judge Mahoney's recommendation:

a. The Commissioner's determination that Eden was not disabled is **reversed** and this matter is **remanded** to the Commissioner for further proceedings consistent with the Report and Recommendation and this order.

b. Judgment shall enter in favor of plaintiff and against the Commissioner.

c. If Eden wishes to request an award of attorney's fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412, an application may be filed up until 30 days after the judgment becomes "not appealable," i.e., 30 days after the 60-day time for appeal has ended. *See Shalala v. Schaefer*, 509 U.S. 292, 296 (1993); 28 U.S.C. §§ 2412(d)(1)(B), (d)(2)(G).

**IT IS SO ORDERED.**

**DATED** this 17th day of October, 2019.

_____
Leonard T. Strand, Chief Judge